FLITEWAYS, INC., APPELLEE, *v.*
LINDLEY, TAX COMMR., APPELLANT.

[Cite as Fliteways v. Lindley (1981), 65 Ohio St. 2d 21.]

(No. 80-762—Decided March 18, 1981.)

*Messrs. Jeffrey, Snell, Rogers & Greenberg, Mr. Richard G. Snell* and *Mr. Daniel T. Harman,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. James C. Sauer,* for appellant.

*Per Curiam.* In this cause, we must decide whether the board properly determined that R.C. 5739.01(E)(1) excepts from sales and use taxation[1] Fliteways' (1) leases of airplanes used in its charter service and flight-training school, (2) purchases of fuel used in its charter service and flight-training school, and (3) purchases of airplanes for resale (by transferring title) where these airplanes were not promptly resold and were thus used prior to resale in Fliteways' charter service and flight-training school. For the reasons set forth, we conclude that only the purchases of airplanes for resale are excepted from taxation under R. C. 5739.01(E)(1).

There is no dispute that all the above leases and purchases would be excepted from sales taxation under R. C. 5739.01(E)(1)[2] *if* Fliteways' subsequent transactions with its charter service and flight-training school customers included the "sale" of airplanes and fuel within the meaning of R. C. 5739.01(B).[3] The board determined that these transactions

---

[1] Pursuant to R. C. 5741.02(C)(2), the use tax is inapplicable to an acquisition of tangible personal property "which, if made in Ohio, would be a sale not subject to the [sales] tax imposed by sections 5739.01 to 5739.31 of the Revised Code." Thus, the parties have argued this case as if it only concerned sales taxation.

[2] R. C. 5739.01(E), in relevant part, provides:

" 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"(1) To resell the thing transferred in the form in which the same is, or is to be, received by him; * * * ."

[3] R. C. 5739.01(B), in part, provides:

" 'Sale' and 'selling' include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred or a license to use or consume tangible personal property is or is to be granted; * * * for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever; * * * . Other than as provided in this section, 'sale' or 'selling' do not include * * * personal service transactions which in-

included the "sale" of airplanes within the meaning of R. C. 5739.01(B) because "the transfer of the aircraft cannot be considered an inconsequential element of a mixed transaction. See *Accountant's Computer Services* v. *Kosydar* (1973), 35 Ohio St. 2d 120, and *Rice* v. *Evatt* (1945), 144 Ohio St. 483." The board also determined that these transactions also included the sale, within the meaning of R. C. 5739.01(B), of the fuel consumed in connection with these transactions.

We disagree with the board because the reasoning of the above-cited and similar cases is not applicable to the facts presented here. In *Accountant's Computer Services* v. *Kosydar, supra,* and a number of later cases,[4] this court considered whether unambiguous sales (by title transfer) of personal property should be viewed, for sales tax purposes, as transfers of tangible personal property, or alternatively, as the rendition of personal services embodied in such property. Further, *Rice* v. *Evatt, supra,* considered the appropriate sales tax treatment of a transaction that included both an unambiguous sale (by title transfer) of tangible personal property and the rendition of personal services. In contrast, in this case, we must face the *preliminary* question of whether any sale (by title transfer or otherwise) of tangible personal property within the meaning of R. C. 5739.01(B) has occurred. See *Servi-Clean Industries* v. *Collins* (1977), 50 Ohio St. 2d 80, 84.

It is clear that Fliteways' transactions with its customers included the rendition of personal services, *i.e.,* transporting passengers and freight (charter service), and teaching its customers how to fly airplanes (flight-training school). To answer the question of whether these transactions *also* included the sale of airplanes or fuel for sales tax purposes, we turn to R. C. 5739.01(B) which defines sale as follows:

" 'Sale' and 'selling' include all transactions by which ti-

---

volve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made."

[4] See, *e.g., Citizens Financial Corp.* v. *Kosydar* (1976), 43 Ohio St. 2d 148; *Federated Department Stores* v. *Kosydar* (1976), 45 Ohio St. 2d 1; *Lindner Bros.* v. *Kosydar* (1976), 46 Ohio St. 2d 162; *Miami Citizens National Bank* v. *Lindley* (1977), 50 Ohio St. 2d 249; *Credit Bureau* v. *Collins* (1977), 50 Ohio St. 2d 270; and *3535 Salem Corp.* v. *Lindley* (1979), 58 Ohio St. 2d 210.

tle or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted;* * * for a consideration in any manner, * * * ."

With respect to the airplanes, it is undisputed that Fliteways did not transfer titles to its charter service or flight-training school customers. Thus, we must determine whether, for sales taxation purposes, Fliteways transferred possession or granted a license to use these airplanes to its customers.[5] We answer this question in the negative and conclude that Fliteways merely utilized these airplanes in rendering personal services to its customers.

In its charter service, Fliteways furnished and maintained the airplanes, employed the pilots and thus merely utilized its airplanes in transporting passengers and freight to various locations. Fliteways did not, for sales tax purposes, sell its airplanes to its charter service customers. See *A. J. Weigand, Inc.,* v. *Bowers* (1960), 171 Ohio St. 78. Likewise, in its flight-training school, Fliteways furnished and maintained the airplanes, employed instructors and thus merely utilized its airplanes in teaching its customers to fly airplanes. Fliteways did not sell airplanes to its flight-training school customers for sales tax purposes.

We also conclude that Fliteways did not sell the fuel consumed in connection with the above personal service transactions for sales tax purposes. The fact that Fliteways included the cost of fuel in its per-hour charge for these transactions does not in and of itself establish that such fuel was "sold" by Fliteways to its customers. Fliteways did not sell its fuel to its customers in separate transactions, nor did it separately bill its customers for this fuel.

We thus hold that Fliteways' transactions with its charter service and flight-training school customers did not

[5] This determination cannot rest solely upon whether Fliteways retained the common-law incidents of possession to its airplanes during its transactions with its customers, since it is questionable whether the common-law concept of possession should be the key factor in determining sales tax liability. In any event, it is likely that the "license to use" provision was included in R. C. 5739.01(B) to prevent taxpayers from excluding various rental arrangements from sales tax liability by manipulating common-law possessory concepts. See Hellerstein & Hellerstein, State and Local Taxation, Cases and Materials (4 Ed. 1978), at page 586.

include either the sale of airplanes or fuel within the meaning of R. C. 5739.01(B).

Alternatively, Fliteways contends that its purchases of airplanes for the purpose of resale (by title transfer), but *not* its leases of airplanes or purchases of fuel for the purpose of use in its charter service or flight-training school, are excepted from sales taxation under R. C. 5739.01(E)(1), notwithstanding these purchased airplanes occasional use in Fliteways' charter service and flight-training school. We agree.

R. C. 5739.01, in relevant part, provides:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the *purpose* of the consumer is:

"(1) To resell the thing transferred in the form in which the same is, or is to be, received by him;" (Emphasis added.)

In determining whether an exception from sales taxation under R. C. 5739.01(E) exists in circumstances where the purchaser has subsequently put the purchased property to more than one use, this court has often relied upon the purchaser's primary use of the property as indicative of his purpose. See, *e.g., Jim White Chevrolet Co.* v. *Porterfield* (1970), 22 Ohio St. 2d 79; *United States Shoe Corp.* v. *Kosydar* (1975), 41 Ohio St. 2d 68, 70-71, and cases cited therein.

Herein, the record establishes that Fliteways' purpose at the time of purchase was to resell (by title transfer) the airplanes. Subsequent to their purchase, Fliteways occasionally utilized these airplanes in its charter service and flight-training school to defray the cost of carrying them in inventory. The record also reveals that the purchased airplanes which were used in Fliteways' charter service and flight-training school remained available for resale at all times. Moreover, the record indicates that Fliteways' preferred and usual policy was to lease the airplanes needed in its charter service and flight-training school because, in its view, leasing was the best way to keep its costs down. Nothing in the record contradicts the conclusion that, had the purchased airplanes not been in inventory, Fliteways would have leased all the airplanes needed in its charter service and flight-training school. Based upon this evidence, we find that Fliteways' purchases of

airplanes were for the purpose of resale, and therefore are excepted from sales taxation under R. C. 5739.01(E)(1).

Thus, with respect to the above airplane purchases, the decision of the board is affirmed. With respect to the leases of airplanes and purchases of fuel, the decision of the board is reversed.

*Decision affirmed in part and reversed in part.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, STEPHENSON and LOCHER, JJ., concur.

HOLMES and C. BROWN, JJ., concur in part and dissent in part.

STEPHENSON, J., of the Fourth Appellate District, sitting for SWEENEY, J.

HOLMES, J., concurring in part and dissenting in part.

I am in agreement with the majority that as to the airplanes purchased or leased for charter and flight-training purposes there is no sale or transfer of possession within the meaning of R. C. 5739.01(B). Any transfer of possession for these purposes would have been incidental to the services rendered by the taxpayer.

However, I differ from the majority herein as to the planes which were claimed to have been purchased initially for resale, but because of their being in the inventory of taxpayer for some period of time were used in the flight-training service. I would agree that some minimal use of these airplanes which were shown to have been purchased for resale should not defeat the sales and use tax exceptions. But, here, the evidence shows that at least one plane which had been purchased in 1975 for resale was still being used in 1979 in the charter and flight-training services of the taxpayer. The original intent of the taxpayer is an important consideration, but may not stand up against strong evidence to the contrary. It appears that at least some of these plane purchases should be taxable.

I also differ with the majority herein relative to the tax upon the fuel used in the charter and flight-training services. It is my view that gasoline purchased by the taxpayer was for purposes of resale to its charter and flight-training cus-

tomers. Even though the customers utilizing these services were not billed separately for the gasoline consumed, it may reasonably be assumed that the mileage to be traveled, and the gallonage of gasoline to be utilized in such travel, would have been calculated and the cost of such gasoline would have been incorporated into such billing. In my view, this constitutes a resale, and, therefore, the exception of R. C. 5739.01 (E)(1) should apply.

C. BROWN, J., concurs in the foregoing concurring and dissenting opinion.